IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN THE MATTER OF: ) | |
| ) | |
| ARLENE MOORE, ) | |
| ) | CASE NO. BK08-42755-TLS |
| Debtor(s). ) | A09-4010-TLS |
| ARLENE MOORE, ) | |
| ) | |
| Plaintiff, ) | CH. 7 |
| ) | |
| vs. ) | |
| ) | |
| SALLIE MAE, ) | |
| ) | |
| Defendant ) | |
| ) | |
| and ) | |
| ) | |
| EDUCATIONAL CREDIT MANAGEMENT ) | |
| CORPORATION, ) | |
| ) | |
| Intervenor Defendant. ) | |

## ORDER

This matter is before the court on the debtor-plaintiff's motion for summary judgment (Fil. #30) and resistance by the intervenor defendant Educational Credit Management Corporation ("ECMC") (Fil. #32). David G. Hicks represents the debtor, and Joel A. Bacon represents ECMC. Evidence and briefs were filed and, pursuant to the court's authority under Nebraska Rule of Bankruptcy Procedure 7056-1, the motion was taken under advisement without oral arguments.

The motion is denied.

The debtor filed this adversary proceeding to discharge her student loan debt, alleging that changes in her economic circumstances render repayment of the loans an undue hardship on her and her family. She has moved for summary judgment, and the student loan creditor has resisted the motion.

The following facts are uncontroverted:

1. The debtor is 62 years old and a resident of Lincoln, Nebraska.

2. She and her husband married in December 2008. They are the parents of six adult children, none of whom reside with them, although she and her husband have been providing financial support to his son who graduated from college in 2009.

3. The debtor was a stay-at-home mother for several years before pursuing post-secondary education. She obtained a bachelor's degree in psychology from the University of Wisconsin - Parkside in approximately 1982, a master's degree in public administration from the same university in 1991, and a master's degree in counseling from Webster University in South Carolina in 1997. The debtor also took classes toward a Ph.D. degree. She used student loan funds for her education.

4. The debtor worked for Racine County in Wisconsin; as the director of a group home for the South Carolina Department of Juvenile Justice; and as a mental health therapist for several social service agencies in Hawaii.

5. The debtor is a licensed professional counselor in South Carolina, and a licensed mental health professional in Nebraska.

6. She currently works for a behavioral health center providing home-based mental health therapy for children with antisocial personality disorders.

7. The debtor's husband is unemployed because of a health condition, but the health condition does not prevent him from working and he is seeking other employment.

8. The debtor suffers from bi-polar disorder, but is not permanently disabled.

9. The debtor signed a promissory note for a federal consolidation loan in December 2003. The loan funds, in the amount of $106,138.46, were disbursed in February 2004.

10. The debtor made regular monthly payments on the student loan debt before she moved to Nebraska in December 2006. Thereafter, she made smaller monthly payments until receiving a deferment in March 2007. She made large monthly payments when she earned a sizable annual salary, prior to moving to Nebraska. She also made a large lump-sum payment in 2004 from an inheritance she received.

11. The debtor filed her voluntary Chapter 7 bankruptcy petition on November 19, 2008.

12. The debtor filed an adversary complaint to determine the dischargeability of her student loan obligations on February 20, 2009, naming as defendants the United States Department of Education and Sallie Mae. The United States' unopposed motion to dismiss was granted on April 17, 2009.

13. ECMC is a qualified loan transferee designated by the United States Department of Education, and is empowered by the department to represent the federal government's interests on issues arising under the federally-insured student loan program.

14. The loan described above has been transferred to the appropriate guaranty agency, and the appropriate guaranty agency has transferred its interest to ECMC in accordance with the Federal Higher Education Act.

15.  ECMC timely intervened in the adversary proceeding and timely filed an answer to the complaint.

16.  The student loan held by ECMC was for an educational benefit and guaranteed by a governmental unit or nonprofit institution.

17.  The total amount due on the student loan obligation of the debtor is $39,740.55 as of December 27, 2009, including interest. Interest continues to accrue on the obligation at the fixed rate of 5.75% per annum, and $6.02 per diem.

Summary judgment is appropriate only if the record, when viewed in the light most favorable to the non-moving party, shows there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c) (made applicable to adversary proceedings in bankruptcy by Fed. R. Bankr. P. 7056); *see, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). In ruling on a motion for summary judgment, the court must view the facts in the light most favorable to the party opposing the motion and give that party the benefit of all reasonable inferences to be drawn from the record, without resorting to speculation. *Hitt v. Harsco Corp.*, 356 F.3d 920, 923-34 (8th Cir. 2004).

The Bankruptcy Code provides that a bankruptcy discharge of debts does not discharge a debtor from any debt —
> . . .
> (8) unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for —
>> (A) (i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or
>>> (ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; or
>> (B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual[.]

11 U.S.C. § 523(a)(8).

A debtor seeking discharge of an educational loan debt bears the burden of proving, by a preponderance of the evidence, that repayment of those loans would impose an undue hardship on her and her dependents. *Parker v. Gen. Revenue Corp. (In re Parker)*, 328 B.R. 548, 552 (B.A.P. 8th Cir. 2005).

"Undue hardship" is not defined in the Bankruptcy Code, so courts have devised their own methods of determining whether an undue hardship exists. In the Eighth Circuit, the "totality of the circumstances" test is used. *Educ. Credit Mgmt. Corp. v. Jesperson (In re Jesperson)*, 571 F.3d 775,

779 (8th Cir. 2009); *Long v. Educ. Credit Mgmt. Corp. (In re Long)*, 322 F.3d 549, 553 (8th Cir. 2003) (citing *Andrews v. South Dakota Student Loan Assistance Corp. (In re Andrews)*, 661 F.2d 702 (8th Cir. 1981)). This requires an evaluation of the debtor's past, present, and reasonably reliable future financial resources; a calculation of the reasonable necessary living expenses of the debtor and her dependents; and any other circumstances unique to the particular bankruptcy case. *Jesperson* at 779 (citing *Long*, 322 F.3d at 554).

> Simply put, if the debtor's reasonable future financial resources will sufficiently cover payment of the student loan debt — while still allowing for a minimal standard of living — then the debt should not be discharged. Certainly, this determination will require a special consideration of the debtor's present employment and financial situation — including assets, expenses, and earnings — along with the prospect of future changes — positive or adverse — in the debtor's financial position.

*Long*, 322 F.3d at 554-55; *Reynolds v. Penn. Higher Educ. Assistance Agency (In re Reynolds)*, 425 F.3d 526, 532 (8th Cir. 2005).

In the present case, the debtor's adjusted gross income in 2008 was $55,000.00, consisting of $45,000.00 in employment income and approximately $10,000.00 in pension income paid to her pursuant to a domestic relations order. In interrogatories answered in July 2009 and supplemented in deposition testimony in September 2009, the debtor and her husband listed the following monthly household expenses:

| EXPENSE TYPE | July 2009 | September 2009 |
|---|---|---|
| Rent | $ 865.00 | $ 865.00 |
| Electricity | $ 59.56 | $ 100.00 |
| Cable/phone/Internet | $ 162.69 | $ 165.00 |
| Gas | $ 44.56 | $ 75.00 |
| Husband's car payment | $ 449.63 | $ 449.63 |
| Groceries | $ 320.00 | $ 400.00 |
| Clothing | $ 50.00 | $ 150.00 |
| Transportation | | $ 150.00 |
| Medical co-pays | $ 45.00 | $ 80.00 |
| Prescriptions | | $ 40.00 |
| Professional liability insurance | $ 10.00 | $ 10.00 |
| Car insurance | | $ 174.00 |

|  |  |  |
|---|---|---|
| Rental insurance | $ | 20.00 |
| TOTAL | $ 2,006.44  $ | 2,678.63 |

The debtor also testified that she owes about $48,000.00 in back taxes and included an $850.00 monthly payment for those taxes on her Schedule J, although she does not currently pay anything on that debt. The debtor further testified that after the deposition she and her husband would be moving to a different apartment for which the monthly rent is $585.00.

Another expense discussed at the depositions of the debtor and her husband was the nearly $1,200.00 they provided each month to his son for rent and student loan payments. The debtor's husband is a co-signor on that loan. The debtor's husband testified that for each of the three months prior to the deposition in September, he paid $800.00 for his son's rent and $360.00 for his student loans. Most of the funds came from the husband's unemployment benefits and his retirement account, with an estimated $200.00 per month contribution from the debtor.

The debtor testified that she suffers from bi-polar disorder, which affects her ability to work because the depressive aspect of the condition causes her to miss a day of work occasionally. She is receiving treatment for the illness, which has helped control the symptoms and effects. The Eighth Circuit made clear in *Reynolds* that a debtor's health situation should be taken into account in the undue hardship analysis because factors affecting a debtor's health also have a financial significance, such that the debtor may be unable to work or the burden of being in debt may create a vicious cycle where the stress causes physical and mental ailments affecting the debtor's ability to work. 425 F.3d at 532-33; *Balm v. Salliemae Serv'g Corp. (In re Balm)*, 333 B.R. 443, 448 (Bankr. N.D. Iowa 2005). In this case, the debtor's health condition is not a disabling one and does not prevent her from working, so it has little bearing on the undue hardship analysis.

Another issue to be considered is the availability to the debtor of various repayment plans under the William D. Ford Federal Direct Student Loan Program. The debtor suggests that because she is in her 60s and intends to work for only a few more years if her health permits, she is unable to pay the $40,000.00 balance on her student loans. A debtor's willingness to participate in the repayment programs is a factor to be considered in the totality-of-the-circumstances evaluation the court must make, but "a student loan should not be discharged when the debtor has 'the ability to earn sufficient income to make student loan payments under the various special opportunities made available through the Student Loan Program.'" *Jesperson*, 571 F.3d at 781 (quoting *VerMaas v. Student Loans of N. Dakota (In re VerMaas)*, 302 B.R. 650, 660 (Bankr. D. Neb. 2003)); *Lee v. Regions Bank Student Loans (In re Lee)*, 352 B.R. 91, 95-96 (B.A.P. 8th Cir. 2006). ECMC states that the full amount of the debtor's loan would be paid off at $250.00 per month over 25 years, but the debtor is eligible for the income-based repayment option, "which provides flexible manageable payments if her income were to decrease significantly or should she choose to retire." Aff. of Julie Swedback ¶¶ 10-11 (Fil. #33). The debtor testified at her deposition that she did not review the repayment plan materials provided by ECMC because she did not think she was eligible for such a program.

After considering the evidence provided on this motion, it is clear that significant factual issues remain. First, the debtor's own income and expense figures indicate a monthly surplus[1] that could be used for loan repayment. Likewise, the $300 per month savings in rent is certainly a factor bearing on the debtor's ability to repay the loan. Second, the information presently before the court is not completely up-to-date. Financial changes occurring since the date of the depositions affect the totality-of-the-circumstances analysis. For example, is the debtor's husband employed and able to assist with household expenses? What are the monthly utility expenses in the debtor's new residence? Are the debtor and her husband continuing to support his son, or are those funds available for loan repayment? What arrangements has the debtor made to begin repaying her tax debt? Finally, evidence of the effect of the debtor's participation in a Ford Program repayment plan would be helpful in the undue hardship analysis. Because the court is unable to determine at this point that requiring repayment of the student loan would cause an undue hardship for the debtor, her motion must be denied.

IT IS ORDERED: The debtor-plaintiff's motion for summary judgment (Fil. #30) is denied.

DATED:  January 7, 2010

BY THE COURT:

 /s/ Thomas L. Saladino
Chief Judge

Notice given by the Court to:
*David G. Hicks
Joel A. Bacon
U.S. Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.

---

[1] While the debtor testified that her income fluctuates on a quarterly basis, her 2008 wages averaged over 12 months less the expenses itemized in the chart at pp. 4-5 leaves a surplus of more than $1,000.00.